1  LAW OFFICE OF HELENA S. WISE
2  HELENA S. WISE, State Bar No. 91163
   1907 W. Burbank Blvd., Suite 101
3  Burbank, CA 91506
4  Tel: (818) 843-8086
   Facsimile: (818) 843-7958
5  lawofficesofhelenasunnywise@earthlink.net
6
7  Attorney for Plaintiffs ED ASNER, CLANCY
   BROWN, GEORGE COE, TOM BOWER,
8  DENNIS HAYDEN, WILLIAM RICHERT,
   LOUIS REEKO MESEROLE, TERRENCE
9  BEASOR, ALEX MCARTHUR, ED O'ROSS,
10 ROGER CALLARD, STEVEN BARR,
   RUSSELL GANNON, STEPHEN WASTELL,
11 JAMES A. OSBURN, and ERIC HUGHES aka
12 JON WHITELEY, collectively known as the United
   Screen Actors Committee (USAC)
13



14
                UNITED STATES DISTRICT COURT
15
            CENTRAL DISTRICT OF CALIFORNIA
16
                                        CV13- 3741 R(FFmx)
   ED ASNER, CLANCY BROWN,
17 GEORGE COE, TOM BOWER,        CASE NO.:
   DENNIS HAYDEN, WILLIAM
18 RICHERT, LOUIS REEKO          **COMPLAINT FOR RELIEF:**
   MESEROLE, TERRENCE BEASOR,
19 ALEX MCARTHUR, ED O'ROSS,     1)  FOR EXAMINATION
20 ROGER CALLARD, STEVEN BARR,       OF BOOKS, RECORDS AND
   RUSSELL GANNON, STEPHEN           FOR AN ACCOUNTING
21 WASTELL, JAMES A. OSBURN, and
22 ERIC HUGHES aka JON WHITELEY,     *(29 U.S.C. §431)*
   collectively known as the United Screen
23 Actors Committee (USAC),       2)  CONVERSION
24
              Plaintiffs,        3)  UNJUST ENRICHMENT
25
           v.                    4)  VIOLATIONS OF BUSINESS
26                                   AND PROFESSIONS CODE
                                     § 17200, ET SEQ.
27
28                               **JURY TRIAL DEMANDED**

ASNER, et al. vs. SAG-AFTRA, et al.                  Case No. 13-CV-
COMPLAINT                          1

LAW OFFICES OF
HELENA SUNNY WISE
1907 W. BURBANK BOULEVARD, SUITE A • BURBANK, CA 91506
(818) 843-8086 • FAX (818) 843-7958 • (323) 849-3317

SCREEN ACTORS GUILD –
AMERICAN FEDERATION OF
TELEVISION AND RADIO ARTISTS,
a labor organization commonly known as
SAG-AFTRA and its GUILD
INTELLECTUAL PROPERTY
REALIZATION, LLC,


                    Defendants.

_____

     Plaintiffs by and through their counsel, based on their experiences, the

investigation of counsel, and on information and belief, allege as follows:

## INTRODUCTION

    1.    Plaintiffs ED ASNER, CLANCY BROWN, GEORGE COE, TOM

BOWER, DENNIS HAYDEN, WILLIAM RICHERT, LOUIS REEKO

MESEROLE, TERRENCE BEASOR, ALEX MCARTHUR, ED O'ROSS,

ROGER CALLARD, STEVEN BARR,  RUSSELL GANNON, STEPHEN

WASTELL, JAMES A. OSBURN, and ERIC HUGHES aka JON WHITELEY,

as individuals, collectively known as the United Screen Actors Committee

(USAC), do hereby bring this action against the SCREEN ACTORS GUILD –

AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS

(SAG-AFTRA), a labor organization, within the meaning of the *Labor*

*Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. Section*

*141, et seq.*, because of the failure and refusal of SAG-AFTRA by and through

its retained leadership to comply with a labor organization's obligations under the *Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA")(29 USC §§ 401, et seq)* which were enacted by Congress to eliminate or prevent improper practices, including a breach of trust, corruption, disregard of the rights of individual employees and other failures to observe high standards of responsibility and ethical conduct on the part of labor organizations, employers, labor relations consultants, and their officers and representatives, which distort and defeat the policies of the *LMRDA*.

2.      Plaintiffs ED ASNER, CLANCY BROWN, GEORGE COE, TOM BOWER, DENNIS HAYDEN, WILLIAM RICHERT, LOUIS REEKO MESEROLE, TERRENCE BEASOR, ALEX MCARTHUR, ED O'ROSS, ROGER CALLARD, STEVEN BARR, RUSSELL GANNON, STEPHEN WASTELL, JAMES A. OSBURN, and ERIC HUGHES aka JON WHITELEY, are, were or have been members of SAG-AFTRA, and/or their predecessor labor organizations and  have appeared in signatory motion picture and/or television productions thereby entitling them to receive  *Residuals* because of the continuous airing of these works, in pre and post-60s markets, pursuant to various Collective Bargaining Agreements between various signatory Producers in the entertainment industry, including members of the *Alliance of Motion Picture and Television Producers (AMPTP)* and SAG-AFTRA or their

predecessors.  Plaintiffs are further informed that once Foreign Countries began enacting laws granting performers an inalienable right to remuneration for the rental and reprography of  their performances in audiovisual works, with such remuneration financed from the "*Performers Share*" of a fund created by enacting levies on devices used in private copying, the retransmission of broadcasts by cable, and the renting out of audiovisual works, certain of those Foreign Countries accorded "National Treatment" to U.S. performers. By so doing, Foreign Countries conferred on performers the same inalienable right to remuneration for the rental and reprography of their performances in "*covered*" or "*signatory*" as well as "*non-covered*" or "*non-signatory*" audiovisual works when such works are exhibited in those countries.

3.       Thereafter, SAG coined the terms, "*Foreign Royalties*" to reference the total sums collected, without the authorization or knowledge of U.S. Performers, from the monies which flow from the "*Performers Rights Remuneration*" and the term "*Foreign Levies*" to reference not only the SAG-designated "*Performers Share*", but a "*Producers Share*" and a "SAG's share" of the "*Performers Rights Remuneration*" as well, ignoring that Foreign Countries have already segregated and compensated the Producers for their share of all monies collected.  SAG-AFTRA has refused to be accountable for all monies received by the labor union, including but not limited to monies

*"passed through to"* Producers, regardless of the term used.

4.     By actions and inactions hereinafter alleged on the part of the retained leadership and representatives of SAG-AFTRA and their predecessors, including Labor Relations Consultants, the ability of Plaintiffs to receive their *Residuals* and *Foreign Royalties,* in a timely fashion, if at all, has been deliberately interfered with, with SAG-AFTRA and their predecessors asserting superior ownership rights to not only collecting all such monies, but in retaining the *Residuals* and *Foreign Royalties* themselves, as well as all interest earned on the proceeds thereof, to the ongoing detriment of the membership of SAG-AFTRA, as well as non-members whose monies have been collected without permission let alone notification from the Labor Union concerning their actions in these regards. SAG-AFTRA and their predecessors have taken these actions and refused to account for monies retained, often claiming an inability to locate the owners of said monies even though said Labor Union(s) knew that said monies should have escheated to the State of California if a labor organization was genuinely unable to locate the rightful owners of said monies after due diligence.

5.     Furthermore, to conceal having created a *"Producers Share"* of the collected *Performers Rights Remuneration* which it began disbursing to the employers of union members more than a decade before any member received

any portion of let alone the one hundred percent rightfully belonging to U.S. performers, SAG filed a motion in the Los Angeles Superior Court to permanently seal the union's financial records on the *Performers Rights Remuneration*, citing the need to protect the confidentiality of *"non-public information"* relating to SAG's *"business operations"*.  SAG did so knowing full well that said financial information under Section 205 of the LMRDA ***"shall be public information"***, and that SAG was remiss in its obligation·to properly report in its annual LM-2 filings *"such detail as may be necessary to disclose its (*a labor organization's*) financial conditions and operations"* (29 U.S.C. 431(b)).

6.     Because of SAG's actions in these regards, Plaintiff Clancy Brown, then a former member of the SAG National Executive Board, along with certain of his colleagues, including Nancy Sinatra, Ed Harris, Martin Sheen, George Coe,  and others, believing that the permanent sealing of the records of SAG's receipts and disbursements of the *Performers Rights Remuneration* to be a flagrant violation of  29 U.S.C. 431(b),  served upon SAG National Executive Director DAVID WHITE and SAG Deputy National Executive Director and General Counsel DUNCAN CRABTREE-IRELAND, a letter on December 2, 2011, demanding complete *accountability of so-called Foreign Royalties, access to Collective Bargaining Agreements and transparency in Union finances.* Of

utmost and urgent concern was the refusal of SAG leadership to even disclose, let alone discuss, the impending expiration and presumed renegotiation and/or renewal of the *Foreign Levy Agreement* which had previously been described in legal proceedings and in the press as a Collective Bargaining Agreement even though the details of same had never been disclosed to the SAG membership let alone submitted to a vote for ratification. Of further concern, among other things, were incomplete LM-2 Reports filed by SAG, despite requirements of specificity in reporting receipts and disbursements pursuant to the *LMRDA, see 29 U.S.C. Section 431(c).*

7.     When this demand was served, SAG and their accountants, PRICEWATERHOUSE-COOPERS claimed on the annual LM-2 that "$95,205,672" was "held in trust for others" without specifying how that amount had been received or specifying whom the "others" might be that are the rightful owners of this money or how or whether SAG actually returned these funds to "others", the rightful owners. Instead, SAG's LM-2 sought to justify the nondisclosures for "tactical reasons".

8.     Concurrently,  SAG also failed to disclose with appropriate specificity on the annual LM-2 the relationship with, activities of, or any income or expenses attributable to the recently formed GUILD INTELLECTUAL PROPERTY REALIZATION, LLC (GIPR) which listed the same business

address as SAG and one if not its only officer as DUNCAN CRABTREE-IRELAND. Because of these events, BROWN and his colleagues believed that a timely and complete disclosure and distribution of the documents and accounting requested would address many of the members concerns and provide proof of transparency and good-faith by the elected and hired leadership of the union.

9.     When CRABTREE-IRELAND responded to the Demand by letter dated December 16, 2011, CRABTREE-IRELAND refused to provide unconditional access to the records, contracts, and agreements requested implying that the entire Board of Directors already knew all details about Union Contracts and Finances including those sought by BROWN and his colleagues. After distributing CRABTREE-IRELAND'S response to his colleagues and conferring about how to proceed, BROWN then replied to CRABTREE-IRELAND by letter dated January 28, 2012 writing that, "...none of the details provided to the Board of Directors in your (Crabtree-Ireland's) reports ever included the information and documents we are requesting. While on the Board of Directors, our understanding of the nature of the negotiations with foreign collecting societies was limited to how you chose to characterize them. At no time was even the Board of Directors presented or allowed to examine the Foreign Levy Agreement or the various collecting society agreements. These

details which were omitted in your reports are precisely what we wish to be provided." CRABTREE-IRELAND and DAVID WHITE have failed to respond, ever since.

10. Soon after the Merger referendum vote, a few of BROWN's colleagues declined to continue pursuing their rights as union members saying they were fearful of professional reprisal. Meanwhile, BROWN and his remaining colleagues decided to afford the newly constituted labor organization, SAG-AFTRA, the opportunity to become transparent and accountable to the membership. The failure and refusal of SAG-AFTRA to do so became evident again upon the filing of SAG-AFTRA's first LM-2 Report, signed by President Ken Howard and Treasurer Matthew Kimbrough on July 30, 2012, wherein SAG-AFTRA simply claimed that $110,892,389 were now "Funds Held in Trust due to Others\Due to Talent" while also refusing, once again, for "tactical" reasons to detail receipts and disbursements involving said monies, except relative to some payments to particular Labor Consultants purportedly involved with *Foreign Royalties.* Consequently, USAC renewed earlier demands upon SAG-AFTRA for accountability and transparency in Union finances.by letter addressed to the elected officials of SAG-AFTRA, dated September 11, 2012. In said letter, CLANCY BROWN, ED ASNER and GEORGE COE, along with certain other named Plaintiffs herein, renewed requests for accountability and

transparency in Union finances relative to all income and expenses, including relative to *Foreign Royalties*, .but also with respect to *Residuals* as well in light of public acknowledgements by SAG-AFTRA that tens of thousands of *Residuals* were "unclaimed" and being held by SAG-AFTRA.   These revelations coupled with statements from SAG-AFTRA executives that the labor organization receives two million a day ($2,000,000) in *Residuals,* while accounting for same remains virtually non-existent, is just as troubling for Plaintiffs in light of the lack of response by SAG-AFTRA to USAC's letter.

11.    In the most recent correspondence, USAC also demanded transparency relative to Labor Consultants who are required to be accountable and free of conflicts of interest when rendering services to labor organizations pursuant to *29 U.S.C. §402(m) and §501*, as well as with respect to GIPR which was still refusing to separately account for its assets, income and expenditures. Despite receipt by Union officials of the September 11, 2012 Demand, all efforts to engage in meaningful dialogue, to provide access to Collective Bargaining Agreements and Contracts, and to permit review and a full accounting of financial transactions in these and other regards have been thwarted by Defendant labor organization and its representatives. Plaintiffs request to even meet with the National Executive Board have been rejected by the SAG-AFTRA leadership, including at a time when seats at the October Board meeting were

being offered to the membership at large on a "lottery" basis.

## JURISDICTION AND VENUE

12.    This action arises under the LMRDA, 29 USC §§ 401, et seq., with the Court having subject matter jurisdiction over Plaintiffs First Claim, pursuant to 28 U.S.C. § 1331, in light of *29 U.S.C. §§ 431,* and may exercise supplemental jurisdiction over Plaintiffs' remaining state law claims pursuant to 28 U.S.C. § 1367(a).

13.    Venue is proper under 29 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted occurred in the Central District of California where many Plaintiffs are located, SAG-AFTRA maintains one of its principal offices, certain Defendants reside, where part of the events or omissions giving rise to the claims occurred, or a substantial part of property that is the subject of the action is situated.

## THE PARTIES

14.    Plaintiff ED ASNER is a former President of the Screen Actors Guild who commenced his impeccable and award winning career as an actor in the 1950s and is touring the county with his one-man show, *"F.D.R.",* after appearing in *"Grace",* on Broadway, at the age of 83.  ASNER who has won more Emmy's than any other male actor became a household legend as *"Lou Grant"* in the long running *Mary Tyler Moore* series and related television spin-

off shows, including *"Lou Grant"* and *"Rhoda"*, and has, over the course of the past half-century, appeared in as well as engaged in voice overs on signatory full length motion pictures, episodic television, animated films, including *"Up"*, and such beloved Christmas specials as *"Elf"*, thereby entitling Plaintiff Asner to continue receiving substantial *Residuals* and *Foreign Royalties* for as long as these artistic works are aired or viewed in their respective markets. Plaintiff ASNER joined CLANCY BROWN and his colleagues when serving the September 11, 2012 Demand Letter upon SAG-AFTRA Co-Presidents Ken Howard and Roberta Reardon and the Board of Directors, and seeks to pursue all available claims for relief on behalf of the SAG-AFTRA membership because of an egregious loss of transparency in Union finances and a resistant indifference on the part of the retained Union leadership and its representatives, including Labor Consultants, to be accountable under the very labor laws SAG-AFTRA and its predecessors are bound.

15.    Plaintiff CLANCY BROWN, best known for his appearances in *"Cowboys and Aliens"*, *"The Highlander"*, and numerous television shows, ranging from *"E.R."* and *"The Jackie Chan Adventures"* to the voice immortalized in such beloved children shows as *SpongeBob SquarePants*, *Teenage Mutant Ninja Turtles*, and *Superman*, and numerous video games, was an immediate past elected member of the SAG National Executive Board when

serving the first written demand for accountability upon SAG on December 2, 2011.   Plaintiff BROWN completed his National Board term and resigned all union committees on which he served in order to assert his rights as a union member without being subject to persecution by the Union and the AFL-CIO with whom SAG-AFTRA is affiliated in light of internal agreements restricting the free speech of SAG Board and committee members.

16.    Plaintiff GEORGE COE, the 2009 recipient of SAG's Ralph Morgan Award for distinguished service, also has an acting career spanning more than fifty years of film, television, commercial and stage work, with Coe's credits including *Saturday Night Live, Kramer vs. Kramer,* and as the voice of *Toyota* for six years.   Plaintiff COE, who has served on the National Executive Board at various times during his stellar career, seeks to pursue all available claims for relief on behalf of the SAG-AFTRA membership because of an egregious loss of transparency in Union finances and a resistant indifference on the part of the retained Union leadership and its representatives, including Labor Consultants and attorneys, to be accountable under the very labor laws SAG-AFTRA and its predecessors are bound.

17.    Plaintiffs TOM BOWER, DENNIS HAYDEN, WILLIAM RICHERT, TERRENCE BEASOR, ALEX McARTHUR, ED O'ROSS, ROGER CALLARD, STEVEN BARR, RUSSELL GANNON, and STEPHEN

WASTELL are aware that the many and various episodes of television series, and/or video games, and/or feature length films, in which they and/or their colleagues have appeared remain popular in multiplatform distribution throughout the world and have reason to believe that more *Residuals* and *Performers Rights Remuneration* than the minimal sums transmitted to Plaintiffs and/or their colleagues, over the course of the past decade, have been retained by SAG and AFTRA, and now SAG-AFTRA.  For instance, *The Waltons*, *Six Feet Under*, *Desperado* and *Die Hard,* in which TOM BOWER, ED O'ROSS, ALEX McARTHUR and DENNIS HAYDEN appeared respectively have become timeless classics in not only the United States but throughout the world as well. The same can be said for many other features and episodic television series, including *General Hospital; Die Hard; Bones; Close Encounters of the Third Kind; Jake and the Fat Man; Judging Amy; Matlock; Star Trek: Enterprise; Chicago Hope; Seinfeld; Frasier; Murder*, *She Wrote; Doogie Howser, M.D.; The Fresh Prince of Bel Air; The West Wing; Scarecrow and Mrs. King; CSI; NCIS; The Edge of Night;  Beverly Hills, 90210; L.A. Law; JAG; Home Improvement; the X-Files; Sabrina, the Teenage Witch; Crossing Jordan;* and *Walker, Texas Ranger*, to name just a few in which certain of the named Plaintiffs have also appeared.

   18.    Plaintiffs are further aware that there are certain types of

performances in covered audiovisual works and certain types of covered audiovisual works, for example, music videos, for which residuals have never been contracted by any SAG-AFTRA collective bargaining agreement but for which the *Performers Rights Remuneration* is collected. ALEX McARTHUR has acted in such music videos, most memorably, opposite Madonna in the classic music video *Papa Don't Preach*. Although SAG-AFTRA has collected performers rights monies for performances in music videos, it has never transmitted such monies to the performers who are the rightful owners of such property. Only by providing for a full accounting will Plaintiffs rights as Union members to demand transparency in finances be realized, in light of SAG-AFTRA's interception and conversion for its own purposes of monies belonging to Plaintiffs and their colleagues, on the guise the labor organization has superior ownership rights or was not equipped to disburse monies wrongfully converted in the first place.

19.    In  addition to credits on popular feature films, television series and video games, Plaintiffs DENNIS HAYDEN, WILLIAM RICHERT, RUSSELL GANNON and  LOUIS REEKO MESEROLE  are jointly informed and believe that although their well-received version of *"The Man in the Iron Mask"* remains in wide distribution and is aired frequently internationally as well as in the United States, no *Residuals* since the first airing have been released, while

*Foreign Royalties* have been withheld, even though SAG asserted ownership interest over said films purportedly to protect the rights of its members to receive their *Residuals.*  Like these colleagues, STEPHEN WASTELL also claims that monies are due and owing because of his appearance in the independent productions of *"The Ghosts of Edendale"* and *"The Game",* both of which WASTELL has reason to believe have been distributed world-wide.

20.     Unlike co-Plaintiffs herein who have made acting their chosen profession, Plaintiff JAMES A. OSBURN was a member of the Sound Crew on *"Close Encounters of the Third Kind"* when chosen by Steven Spielberg to perform a minor speaking part in said film, thereby entitling OSBURN to become a member of SAG. Although OSBURN accepted said invitation and became a member of SAG for a number of years, OSBURN, by then the elected Business Representative of the Hollywood Sound Union, IATSE Local 695, ceased his SAG membership largely because of difficulties OSBURN was encountering because of SAG's interference with *Residual* checks that was affecting OSBURN's financial wellbeing.  Despite same, OSBURN would still be entitled to *Residuals and Foreign Royalties*, yet OSBURN has not received any notice concerning same, nor did he learn until immediately prior to the filing of the instant lawsuit that OSBURN's name is now appearing on the SAG-AFTRA *"Unclaimed Residuals"* List, even though OSBURN is and has been the

elected Business Representative of IATSE Local 695, including most recently

since 1998, and is quite familiar to SAG's outside Labor Counsel for the past

several decades. As a Business Representative who also served in said capacity

from 1979 through 1990, before becoming the Boom Operator on the Oscar

Award-winning James Cameron movie, *"Titanic"*, OSBURN is most familiar

with the transparency and reporting requirements that a labor organization is

required to adhere to, as well as the criminal penalties that officers and

representatives, including Consultants, may be subjected to for failure to comply

with federal statutes and regulations in these and other regards, see *29 U.S.C.*

*§431(c)*.

     21.     Finally and although ERIC HUGHES aka JON WHITELEY is best

known as the screen writer of *"Against All Odds"* and *"White Nights"*, Plaintiff

Hughes has been a member of SAG for more than four decades, having first

performed in *"Jericho"*, a World War II movie that continues to be shown in

national and foreign markets, including in videotape format.   Because

HUGHES has been an active member of the Writers' Guild of America,  briefly

holding the position of President of WGAW and is now a lifetime member,

HUGHES has been at all times material herein, privy to and in possession of

records showing the multi-millions of dollars collected by the Writers Guild

from various foreign collecting societies and thus is informed and believes SAG

and AFTRA and now SAG-AFTRA have grossly understated the amount of *Foreign Royalties* collected by SAG on behalf of Performers, and other artists, and have deliberately refused to account for same, to the ongoing detriment of members and non-members alike, including on signatory and non-signatory productions.

22.    Defendant SAG-AFTRA is a labor organization which General Counsel DUNCAN CRABTREE-IRELAND and National Executive Director DAVID WHITE caused to be incorporated in the State of Delaware on March 30, 2012, although SAG had been a corporation organized in the State of California since its inception in July 1933. Plaintiffs have reason to believe CRABTREE-IRELAND and WHITE have sought to escape the Escheat laws of California which would have required the predecessors of SAG-AFTRA and now SAG-AFTRA to turn over *Residuals* and *Foreign Royalties* allegedly *"unclaimed"* or involving *"unable to locate"* (*"UTL"*) owners to the State of California which operates a widely publicized program to reunite escheated monies with their rightful owners or heirs.

23.    Plaintiffs are informed and believe that the GUILD INTELLECTUAL PROPERTY REALIZATION, LLC ("GIPR") was established by CRABTREE-IRELAND, even though the tasks assigned to GIPR had traditionally been performed by SAG, including CRABTREE-IRELAND

and his staff.  Although GIPR has been separately established, GIPR has failed to file its own Reporting Forms and thus has failed to provide an accounting for all monies handled by GIPR, including additional salaries and expenses attributable to said entity. Only by affording a full and complete audit of the activities and financial transactions involving Defendant GIPR will Plaintiffs and the public be reassured that the funds entrusted to Defendant labor organization, and that all products seized, if at all, on the guise of protecting the labor organization's members, are fully accounted for.

## COMMON ALLEGATIONS

24.    Transparency in and accountability of Union finances is further warranted because of a blatant refusal to disclose expenditures or receipts involving the ENTERTAINMENT STRATEGIES GROUP (ESG) where DAVID WHITE was employed after WHITE departed SAG as its General Counsel in 2005 and from which WHITE returned to SAG to become its Interim National Executive Director, following the arrest of attorney MARC DREIER who controlled ESG.  The sentencing alone of DREIER, now serving twenty years in federal prison for a variety of offenses, including investment fraud affecting numerous Union Funds, and the arrest of DREIER for impersonating a representative of a Teacher's Pension Fund in Toronto, California, alone warrants full disclosure, with certain Plaintiffs having reason to believe that

WHITE did not divulge the full extent of ESG's investment schemes, let alone to what degree WHITE and other former SAG employees may have if not continued to commit Labor Union funds to said ventures. In these regards, Plaintiffs note that following his return to SAG, and now as the National Executive Director of SAG-AFTRA, WHITE has ensured the funneling of continued consulting opportunities to SALLIE WEAVER who worked with WHITE at ESG and for which accountability has been actively resisted by WHITE.

25.     By affording access to accounting and bank records detailing expenditures and receipts, Plaintiffs will also be able to ascertain the degree to which, if any, fiduciary duties owing to the Union membership have been compromised because of the expenditure of Union funds on First Class travel, including to foreign countries, as well as lavish parties and political events. Similarly disclosure of expenditures involving Consultants who are required to but have failed or refused to file federal reporting forms will demonstrate the extent to which SAG-AFTRA's obligations to its membership, including to preserve and protect the Union's coffers, including from conflicts of interest, have been compromised and if so, by whom.

26.     Plaintiffs have reason to believe that commencing in or about 2002, a scheme was concocted by various staff employed by SAG, including its

then Executive Director, ROBERT PISANO,  as well as members of its legal

staff, including WHITE and CRABTREE-IRELAND, as well as labor

consultant ROBERT HADL,  all of whom have been traditionally aligned with

the interests of management, to confuse the elected leadership of SAG and the

membership concerning the role and fiduciary responsibilities of SAG, as a

labor organization, in collecting, distributing and accounting for monies owing

to performers. Up until said time, SAG had been transparent in its financial

matters, detailing receipts and disbursements, including relative to transactions

involving monies entrusted to it to secure remuneration owing to its members

and non-members on "covered" works with Signatory Producers.  Plaintiffs are

informed and believe that in or about 2002, SAG's hired leadership started

changing its financial practices, thereby causing SAG's Treasurer, Kent

McCord, to express concern when signing the LM-2 Report for Fiscal Year

2002, in November 2002.

      27.    Not long thereafter, the United States Congress expressed its

intentions to ensure transparency in union finances, with more detailed reporting

requirements thereafter added to the Form LM-2 reports in October 2003, *Labor*

*Organization Annual Financial Reports, 68 FR 58374.*  Although these changes

were designed to provide more information to a Union's members in the

Union's annual financial reports, SAG, shortly following notice that lawsuits

were being threatened against the Directors Guild of America (DGA) and the Writers Guild of America (WGA) because of their failure to distribute *Foreign Royalties* to their members, stopped providing detailed information about its receipts and disbursements involving not only *Foreign Royalties* but *Residuals* as well, in filed LM-2s and 990s. The SAG leadership, including WHITE and CRABTREE-IRELAND, assured the elected leadership that SAG was fully complying with applicable laws in these regards and thus the SAG elected leadership had no reason to question WHITE and CRABTREE-IRELAND's representations in these regards.

28.     Contemporaneously, SAG proclaimed it was successfully operating a *Residual Repayment Program* and had been doing so for more than thirty years, with its retained legal counsel, including TAYLOR, ROTH, BUSH & GEFFNER and its successor firms,  GEFFNER & BUSH and thereafter BUSH, GOTTLIEB, SINGER, LOPEZ, ADELSTEIN having directly negotiated with the Producers, including the ALLIANCE OF MOTION PICTURE AND TELEVISION PRODUCERS, collective bargaining agreements providing for the continuing payment to SAG members and non-members of *Residuals,* if not commencement of the collection of *Foreign Royalties* as well.  By the latter time, JAY ROTH was now firmly entrenched as the National Executive Director of the DGA, having departed TAYLOR,

ROTH, and was actively making decisions about *Foreign Royalties* along with

HADL that was impacting SAG, as well as the WGA to whom ROTH's firm

also rendered legal advice.

29.     Plaintiffs have reason to believe that not long after the DGA and

the WGA were threatened with suit because of their withholding of *Foreign*

*Royalties,* SAG grossly diminished its payment of *Residuals* and *Foreign*

*Royalties*, if not suspended payments completely to mask an alterior covert

motive to stockpile as part of SAG's own assets undistributed *Residuals* and

*Foreign Royalties.* Plaintiffs are informed and believe SAG has in turn

converted *Residuals* and *Foreign Royalties* to its own use, either by diminishing

the principal received or the interest earned thereon, to pay increasing salaries to

its Executive Officers, to pay for 1st class travel, political events and lavish

parties, as well as to provide substantial retainers to outside consultants,

including HADL, legal counsel, accounting and Information Technology firms,

and companies purportedly engaged in the distribution of *Residuals* and

*Royalties*, all to the ongoing detriment of the membership.  As evidence of same,

Plaintiffs note that in 2002, SAG reported on its LM-2, that it was holding only

$ 12,085,425, in trust for its members.  As of 2011, SAG reported on its LM-2

that said monies had grown to in excess of $95,205,672, while SAG-AFTRA,

after one month of operation, purported that the sum being held in these regards,

presumably in different accounts, was now in excess of $110,000,000.

30.     Plaintiffs are informed and believe that in light of public statements by SAG as to the amount of monies collected for *Foreign Levies* between 2008 and present, the sum of which is disputed by Plaintiffs, and the purported disbursement of only $250,000 prior to 2008 and more than $ 8,000,000 dollars from 2008 through 2010, with both sums disputed by Plaintiffs as well, then by process of deduction the lionshare of the monies SAG-AFTRA claims it is holding in trust are attributable to undistributed *Residuals,* which SAG-AFTRA and its predecessors claim come into the labor organization to the tune of $2,000,000 per day.  Plaintiffs are informed and believe that SAG-AFTRA and its predecessors would never have obtained possession of *Residuals* to place in trust in the first place without wrongfully endorsing checks issued by signatory Producers directly to performers yet forwarded by the Producers, at the labor organization's insistence, to SAG and AFTRA, solely for tracking purposes so the labor organization could purportedly determine what dues should be charged to its members.

31.     By so acting, Defendant SAG-AFTRA and its predecessors have precluded Plaintiffs and others from timely collecting earned *Residuals* to which they are entitled, even though Producers have issued W-2s to Plaintiffs and others as if the *Residual* checks were in fact received, when in

fact SAG-AFTRA and its predecessors have withheld same to the ongoing detriment of members and non-members alike.  In these regards, SAG publicly acknowledged in the trades that *"unclaimed residuals"* had increased from 39,358 in 2004 to 66,848 by 2008 and to 69,184 by 2010.  As of April 13, 2012, the unclaimed residuals list had increased to in excess of 75,000.   Contemporaneously, SAG leadership, including CRABTREE-IRELAND has sought to justify the burgeoning retention of *Residuals* on the premise that SAG cannot locate the heirs or estates of such well known entertainment and/or political icons as Frank Sinatra, John F. Kennedy, Larry Hagman or Sonny Bono, while lacking the ability to send checks owing to the parents of television personality Anderson Cooper, including his mother, Gloria Vanderbilt, or his now deceased father, Wyatt Cooper, let alone Ed Asner's son, Matthew Asner who is now the Southern California Executive Director of Autism Speaks.

    32.    Simultaneously and although WHITE has stated that state-of-the-art equipment nicknamed *"Bullwinkle"* and *"Rocky"*, has been purchased at a substantial expense to the membership to expedite processing of *Residuals,* the delay in processing has increased three-fold, relative to checks actually sent to members, while SAG-AFTRA continues to refuse to account for *Residuals* which have been retained as *"unclaimed"*.

33.     With respect to *Foreign Royalties,* at various times commencing in 2008 to present, CRABTREE-IRELAND has been quoted in entertainment magazines as well as the *Huffington Post*, as stating that the organization over which he now sits as General Counsel, has the authority to collect monies on behalf of its members, including from various collecting societies, but either is without authorization to distribute same to its members, holds superior ownership interests in said monies, or has been thwarted in its distribution efforts due to a purportedly antiquated computer system, even though SAG claimed to have expended several million dollars each year, commencing in 2004 to present, relative to computer hardware, software, and IT maintenance, including from staff and consultants alike, including Dina Kampmeyer, during the same periods of time that the system was purportedly broken.  Ironically the purportedly antiquated computer system did not impede SAG's ability to continue to bill and collect dues and assessments from its members, but merely to reunite members with monies clearly due and owing to said performers.

34.     The instant demand that SAG-AFTRA, touted as America's premier labor organization, become accountable is further mandated by the inconsistencies and contradictions also inherent in other financial forms which SAG-AFTRA and their predecessors have filed, particularly with respect to receipts, liabilities and disbursements involving *Residuals and Foreign*

*Royalties.* For instance, review of 990 Forms also filed for the same years as LM-2s show that SAG-AFTRA's predecessors, whose assets and liabilities have purportedly been merged into SAG-AFTRA, have increased their coffers by failing to distribute the monies received in these regards, while any distributions have been minimal if not *de minimis* when compared to the sizeable and ever increasing expenditures for Labor Consultants, attorneys and accounting firms who do not traditionally handle or represent labor organizations, with PRICEWATERHOUSE COOPERS charging AFTRA in excess of $700,000.00 two years in a row for "consulting" services. Despite same, noticeably absent from AFTRA's filings is any evidence of its actual distribution of *Foreign Royalties,* while certain Plaintiffs have heard that SAG has held onto monies attributable to works covered under AFTRA's Collective Bargaining Agreements, thereby precluding AFTRA from reuniting its members with monies clearly due and owing to them, prior to merger.

35.    Equally disconcerting is the lack of transparency relative to SAG-AFTRA's handling of the *"Producer's Share"* of *Foreign Royalties,* let alone the *Administrative Fees* it has surcharged against *Foreign Royalties,* if not *Residuals,* as well. By failing to account for receipts from foreign collecting societies, let alone for the *Residual* checks endorsed by SAG-AFTRA and its predecessors, and for all disbursements pertaining to both, SAG-AFTRA and its

predecessors have precluded members from questioning whether funds have been wrongfully diverted to entities affiliated with or controlled by the Union's leadership, let alone the Producers or its Consultants.

36.     Contradictions within the records which have been federally filed are even more glaring in light of a purported "Audit" of *Foreign Royalties* which PRICEWATERHOUSE COOPERS released on October 15, 2012, after the September 11, 2012 demand served by certain USAC Plaintiffs was acknowledged by SAG-AFTRA's legal counsel.  It should be readily apparent that the recent "Audit" was designed to buttress the credibility of WHITE and CRABTREE-IRELAND and SAG relative to its generosity in allegedly surcharging only a 10% administrative fee against *Foreign Royalties*, at a time when the Producers had purportedly authorized SAG to take 15% of the "*Performers share*" for its own "*institutional and social purposes*".  Although the Producers negotiated over this subject with SAG, Plaintiffs submit that said actions are in and of themselves inconsistent with the *Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. Section 141, et seq.*, which prevents an Employer from enmeshing itself in the internal affairs of a Union.  Regardless, Plaintiffs note that the membership of SAG and AFTRA were never told about let alone given the opportunity to ratify the *Foreign Levies Agreement* nor did SAG's Constitution and By-Laws then authorize an

assessment or surcharge against *Residuals* or *Foreign Royalties.*

37.    Although the intent of the recently released "Audit" is obvious, it actually reinforces Plaintiffs demand for full accountability and restoration of transparency in Union finances since although it purports to substantiate WHITE and CRABTREE-IRELAND's public announcement that SAG has also generously distributed approximately $8 million in *Foreign Royalties* since 2008, as well as CRABTREE-IRELAND's earlier statements that only approximately $250,000.00 had been distributed prior thereto, the Union's accountants failed to track prior LM-2s filed in these regards by SAG when SAG was offering greater transparency than WHITE and CRABTREE-IRELAND have permitted ever since.  For instance, while seeking to reaffirm CRABTREE-IRELAND's statements, PRICEWATERHOUSE COOPERS overlooked prior LM-2s which had shown that between 2003 and 2004, SAG claimed to have distributed in excess of $1.2 million in *Foreign Royalties.* The sudden disappearance of said entry in the recently released "Audit" coupled with SAG-AFTRA's continuing refusal to detail expenses and receipts, including of the total sum of monies received by SAG from Foreign Collecting Societies, before the 50% of the *"Performers Share"* was subtracted for transmittal to the Producers, and to refuse to detail the distribution of monies to Producers, demonstrates that the "Audit" claim that only approximately 10% was charged

as an Administrative Fee is also unworthy of credence, particularly in light of documented expenditures of in excess of $20 million on computer consultants, hardware, software and IT maintenance, as well as on staff, Labor Consultants and Attorneys purportedly involved directly with *Foreign Royalties* during the period of time at issue.

38.    Contemporaneously, Plaintiffs have reason to believe that SAG collected *Foreign Royalties*, including on behalf of AFTRA, if not other crafts in the entertainment industry, yet failed and refused to perform its fiduciary duties in ensuring the proper distribution of these monies to AFTRA and possibly other crafts for timely distribution of same directly to its rightful owners or to such other entities designated to ensure that a benefit would inure to the members of the applicable labor organizations. Because of their actions and the deliberate withholding of said monies, while refusing to account for all receipts and disbursements involving *Foreign Royalties,* Plaintiffs have reason to believe that SAG-AFTRA has now amassed a substantial slushfund that does not belong to the labor organization but instead belongs to members and non-members, and/or their estates, on covered and uncovered works. By withholding said monies and refusing to account for same, SAG-AFTRA has ignored its fiduciary obligations and has effectively loaned money belonging to its members to itself, including principal and interest, and has unlawfully stolen monies belonging to non-

members and possibly other crafts in the entertainment industry, despite ample

caselaw and criminal statutes condemning such practices.  As the United States

Supreme Court has recently reaffirmed observed in *Knox vs. SEIU,* 567 U. S. __,

in yet another agency shop context, a labor union cannot extract a loan from

unwilling nonmembers even if the money is later repaid.

39.    In light hereof, Plaintiffs have reason to believe SAG and AFTRA's

agents, employees and representatives, including its attorneys and accountants,

deliberately engaged in forum shopping for the purpose of incorporating its

newly merged organization in Delaware where escheating is only permitted for

residents of Delaware.  In these regards, it is affirmatively alleged that WHITE,

CRABTREE-IRELAND and others knew that practically the entire membership

of the new union, SAG-AFTRA, and its predecessor unions, SAG and AFTRA,

reside currently and historically in California.   Plaintiffs have reason to believe

these actions were taken to collect, retain, and withhold member and non-

member property by avoiding California escheat laws which have historically

obliged SAG to make every effort to unite members (and non-members) with

their property or surrender that property to the State of California.

40.    Simultaneously, Plaintiffs allege that merger proponents,

particularly WHITE and CRABTREE-IRELAND deliberately buried in Merger

Documents a change in the Constitution and By-Law which would permit the

labor organization to charge and withhold administrative fees from all *Residuals* and *Foreign Royalties* collected. Plaintiffs have reason to believe that this change in the *Constitution and By-Laws,* as embodied in *Article IV, Section B* and *Article XI, Section F,* was designed to exculpate the leadership of SAG and AFTRA who have over the course of the past decade unlawfully transferred to the Union's own Treasury, most of the interest collected on *Residuals* and *Foreign Royalties,* if not the principal as well. However, such exculpatory language, including in the *Constitution and By-Laws* of a labor organization let alone a general exculpatory resolution of a governing body purporting to relieve any person of liability for breach of the duties set forth in the *LMRDA, 29 USC § 501(a),* is void and against public policy.

41.    Certain Plaintiffs further believe that receipt of a satisfactory accounting, and the disgorging of profits by SAG-AFTRA is also warranted in light of efforts by *Federal Insurance* in the litigation initiated by SAG against *Federal Insurance* to also expose this wrongdoing, including through discovery and depositions taken of the firmly entrenched hired leadership and staff of SAG-AFTRA. *SAG vs. Federal Insurance Company, Case 2:11-cv-07123-DMG —VBK.* Plaintiffs are informed and believe that said discovery stands in stark contrast with the minimal, if any, discovery engaged in, prefatory to resolution of the class action filed by *Ken Osmond* against SAG relative to *Foreign Levies,*

where SAG's fiduciary duties as a labor organization under the *LMRDA* were never at issue. *Osmond, etc., vs. SAG,* Los Angeles Superior Court Case No. BC 377780.

42.    Given the improprieties apparent herein and in light of the recent action of the United States in signing the *Beijing Treaty* in June 2012, thereby expanding upon the rights of U.S. performers to "national treatment" in an even greater number of signatory countries than previously recognized, an alternative to collection and distribution of the *"Performers Rights Remuneration"* by other than SAG-AFTRA is warranted.

## FIRST CLAIM FOR RELIEF

## DEMAND FOR EXAMINATION OF BOOKS,

## RECORDS AND ACCOUNTS, DAMAGES

## AND INJUNCTIVE RELIEF, 29 USC § 431

## (AGAINST SAG-AFTRA AND GIPR)

43.    Plaintiffs hereby repeat, reallege and incorporate by reference the allegations contained in paragraphs 1 through 42, above.

44.    In light hereof, Plaintiffs do hereby allege that Defendant SAG-AFTRA has failed to comply with its obligations under the *LMRDA,* including *29 USC §431,* including to file financial reports disclosing annually all "(1) assets  and liabilities at the beginning and end of the fiscal year; (2) receipts of

any kind and the sources thereof; (3) salary, allowances and other direct or indirect disbursements (including reimbursed expenses) to each officer also to each employee who, during such fiscal year, received more than $10,000 in the aggregate from such labor organization and any other labor organization affiliated with it or with which it is affiliated, ...; (4) direct and indirect loans made to any officer, employee, or member, which aggregated more than $250 during the fiscal year, together with a statement of the purpose, security, if any, and arrangements for repayment; (5) direct and indirect loans to any business enterprise, together with a statement of the purpose, security, if any, and arrangements for repayment; and (6) other disbursements made by it including the purposes thereof." *29 U.S.C. § 431(b).*

45.     Because of adamant refusal of SAG-AFTRA to permit Plaintiffs to examine SAG-AFTRA's books, let alone to account for receipts and disbursements, including involving GIPR, Plaintiffs do hereby give notice that they are renewing their demand, as encompassed in the USAC Letter of September 11, 2012, and undersigned counsel's further letter dated December 17, 2012 to BOB BUSH of Jay Roth's former firm, still acting as SAG-AFTRA counsel, seeking access to all Collective Bargaining Agreements, Contracts, Agreements, Memorandums of Understanding and Sideletters (collectively "Agreements") which pertain to the collection and distribution of *Residuals* and

*Foreign Royalties*, including from Foreign Collecting Societies, since said

Agreements define what monies were to be given to SAG-AFTRA as a

fiduciary. Plaintiffs submit that a full accounting will not be realized absent

access to the very documents specifying the formula upon which *"Foreign*

*Royalties"* are calculated, including what if any has been earmarked as the

*"Producer's Share"* and the *"Performer's Share"*. Since the 10-Year 2001

Foreign Levies Agreement was executed by signatory Producers and SAG, and

following its recent renewal, disclosure of the true amount of the *"Performer's*

*Share"* received by SAG, including as early as 1997 to present, is warranted,

given the glaring discrepancies between federal mandated documents and

statements made by CRABTREE-IRELAND to trade newspapers, which

collectively restrict the *"Performers Share"* to less than fifteen million, at a time

when the DGA and the WGA have publicly acknowledged that the amount of

*Royalties* received by their labor organizations alone well exceeds

$100,000,000.

46.     In these regards, Plaintiffs maintain that Plaintiffs will be unable

to fulfill their rights under the *LMRDA,* including *29 USC §414,* including to

ensure that the financial records provided by Defendants hereinafter are

complete, accurate and capable of ensuring transparency in Union finances,

absent unfettered access to the following:

---

ASNER, et al. vs. SAG-AFTRA, et al.        Case No. 13-CV-
COMPLAINT                          35

A)  All Agreements between SAG, AFTRA and now SAG-AFTRA  and :

    1)  IFTA Collections (formerly AFMA Collections);

    2)  Fintage House;

    3)  Compact Media Group (formerly Compact Collections).

    4)  Film Payment Services;

    5)  Media Services;

    6)  Robert Hadl;

    7)  Sallie Weaver;

    8)  Entertainment Strategies Group (ESG); and

    9)  Pricewaterhouse Coopers.

B)  All agreements into which the Labor Organization and its predecessors have entered under Paragraph 5 of the Foreign Video Levy agreement, with the following collecting societies:

    1)  ADAMI   Société Civile pour L`Administration des Droits des Artistes et Musiciens Interprètes (France);

    2)  AISGE   Artistas Intérpretes, Sociedad de Gestión (Spain);

    3)  CPRA とは   実演家著作隣接権センター (Japan);

    4)  FILMKOPI (Denmark);

    5)  FINTAGE (Netherlands);

    6)  FRF-VIDEO Filmproducenternas Rättighetsförening (Sweden);

7) GDA Gestão dos Direitos dos Artistas, Intérpretes ou

Executantes (Portugal);

8) GEDIPE Associação Para a Gestão de Direitos de Autor,

Produtores e Editore (Portugal);

9) GWFF Gesellschaft zur Wahrnehmung von Film- und

Fernsehrechten mbH (Germany);

10) SGAE Sociedad General de Autores y Editores (Spain);

11) SWISSPERFORM Gesellschaft für Leistungsschutzrechte

(Switzerland);

12) THUISKOPIE Stichting de Thuiskopie (Netherlands); and

13) VEVAM Verening ter Exploitatie van Vertoningsrechten op.

Audiovisueel Materiaal (Netherlands).

47.    Plaintiffs further seek to recover damages on behalf of members and non-members alike, as well as orders ensuring the immediate distribution to their rightful owners of all *Residuals* and *Foreign Royalties* not yet paid, together with a proportionate share of interest earned on the principal of all such monies received by SAG-AFTRA and its predecessors, because of the wrongful retention of said monies to begin with, while further enjoining SAG-AFTRA from negotiating any further *Residual* Checks which have been or will be issued by Producers to performers.

48.     Plaintiffs further seeks allocation of a reasonable part of the recovery to pay the fees of counsel and to compensate Plaintiffs for any expenses necessarily paid or incurred in connection with this litigation.

## SECOND CLAIM FOR RELIEF

## CONVERSION

## (AGAINST SAG-AFTRA AND GIPR)

49.     Plaintiffs hereby repeat, reallege and incorporate by reference the allegations contained in paragraphs 1 through 42, above.

50.     As more fully alleged above, Plaintiffs maintain that SAG-AFTRA and its predecessors did not and does not have a right to negotiate and endorse *Residual* checks issued by Producers, let alone to withhold *Residuals* and *Foreign Royalties* collected by SAG-AFTRA and its predecessors from their rightful owners, namely performers on "covered" and "uncovered" works.  Likewise, Plaintiffs affirmatively allege that neither SAG nor AFTRA had ever been given authority by the membership to collect the *"Performers Share"* from Foreign Collecting Societies, arising out of the extension of National Treatment rights to US performers, on "covered works", while neither labor organization, nor SAG-AFTRA, let alone GIPR, has standing to collect said share  on "works" produced without the labor organization entering into a  binding

Collective Bargaining Agreement covering said works, with Plaintiffs affirmatively alleging that most pornographic productions, now largely distributed on videocassettes abroad, are filmed as "nonunion" ventures.

51.   In the same vein, due to problems between SAG and particular producers involving specific productions on which Plaintiffs DENNIS HAYDEN, LOUIS REEKO MESEROLE, WILLIAM RICHERT and STEPHEN WASTELL performed, SAG interfered with the ability of these Plaintiffs to receive *Residuals* or continuing *Residuals,* while all *Foreign Royalties* presumably have been and still are being collected by the Labor Union but withheld from these Plaintiffs.  To the extent SAG-AFTRA claims superior ownership rights over *"The Man in the Iron Mask", "The Ghosts of Edendale, and "The Game",* then affected Plaintiffs allege that SAG-AFTRA would still be obligated to pay *Residuals* to said Plaintiffs if the purpose of their actions was, as SAG-AFTRA publicly touts, to protect the performers and guarantee their receipt of all monies, including but not limited to *Foreign Royalties* and *Residuals.*

52.   By their actions, Defendant SAG-AFTRA and its predecessors have by and through WHITE, CRABTREE-IRELAND and others, intentionally collected and taken possession of specifically

identifiable amounts of monies belonging to the Plaintiffs and others, including on "covered" and "uncovered" works.  Further, Defendants have held these monies in their sole possession for an unreasonably long period of time, if not converted same to their own use, to the ongoing detriment of Plaintiffs and all other members of SAG-AFTRA, and non-members as well.

53.     Until Exculpatory provisions were added to the SAG-AFTRA Constitution and By-Laws, at time of merger, there was never any written consent or permission given to Defendants' to collect *Foreign Royalties,* let alone endorse and retain *Residuals.* Defendant SAG-AFTRA and its predecessors have exercised dominion over a specific sum of money that is capable of identification, via a proper accounting, with said monies, including all interest collected thereon, rightfully belonging to the membership of SAG-AFTRA, as well as individuals whose monies have been wrongfully collected on "non-covered" works. Plaintiffs are informed and believe that Defendants have collected monies on behalf of SAG-AFTRA members and others and asserted to third-party payors that Defendant and its predecessors had or have the right to collect such monies, when they do not.

54.     Defendants' conduct was a substantial factor in causing the harm suffered by Plaintiffs and the membership of SAG-AFTRA and others. As a direct and proximate cause of Defendants' actions, Plaintiffs have been damaged in an amount to be determined at trial but in excess of the jurisdiction of this Court.

55.     In addition, Defendants' conduct as described herein was done with a conscious disregard of the rights of Plaintiffs and other SAG-AFTRA members, if not other performers who have never been affiliated with said labor organizations or worked on "signatory" projects. Plaintiffs are informed and believe Defendant SAG-AFTRA and its predecessors, by and through WHITE, CRABTREE-IRELAND and HADL have engaged in these actions with the intent to oppress Plaintiffs and others, while intentionally concealing information as to the existence and availability of *Residuals* and *Foreign Royalties*, and have furthermore understaffed as well as placed individuals with questionable credentials in charge of ensuring timely distribution of *Residuals* and *Foreign Royalties*, if not deliberately precluded the Distribution Department from distributing said monies so that Defendants could keep the *Residuals* and *Foreign Royalty* monies and interest for their own pecuniary or personal interests. By so acting,

Defendants actions have precluded Plaintiffs and others from collecting earned *Residuals* and *Foreign Royalties* to which they are entitled, even though Producers have issued W-2s to Plaintiffs and others as if *Residual* checks were in fact received.

56.     Defendants' acts in these and other regards constitute oppression, fraud, and/or malice under California Civil Code § 3294, with all such acts carried out by the managing agents of SAG-AFTRA and GIPR, thereby entitling Plaintiffs to an award of punitive damages in an amount appropriate to punish or set an example of the Defendants in an amount to be determined at trial.

57.     In addition to the foregoing damages, Defendants have been unjustly enriched as a result of the foregoing actions, and, therefore, Plaintiffs seek imposition of a constructive trust on all monies wrongfully obtained by Defendant SAG-AFTRA and its predecessors, as well as GIPR, including as otherwise provided pursuant to California Civil Code §§ 2223-2224.

58.     Further, Defendants' wrongful conduct is continuing and ongoing. Plaintiffs and the entire membership of SAG-AFTRA have suffered, and will continue to suffer, irreparable injury for which there is no adequate remedy at law, unless Defendant SAG-AFTRA and GIPR is

enjoined by the Court from continuing to collect such monies without paying them out. Alternatively, injunctive relief is sought for an order that an independent body be authorized to collect and pay such monies subject to Court supervision, as SAG-AFTRA and GIPR is clearly incapable of acting as a fiduciary, let alone as a collecting society.

## THIRD CAUSE OF ACTION

## UNJUST ENRICHMENT

## (AGAINST SAG-AFTRA AND GIPR)

59.     Plaintiffs hereby repeat, reallege and incorporate by reference the allegations contained in paragraphs 1 through 42, above.

60.     As a result of Defendants' acts, as set forth in this Complaint, that have and continue to deprive Plaintiffs of *Residuals* and *Foreign Royalties*, Defendants have received, and continue to receive, a substantial financial benefit. Under the facts and circumstances surrounding this case, it would be unjust to permit Defendants to retain this benefit.

61.     As a result, Plaintiffs request restitution of all monies wrongfully obtained by SAG-AFTRA and their predecessors, as well as GIPR, including all interest earned thereon.

62.     Further, Defendants' infringing conduct is continuing and ongoing. Plaintiffs have suffered, and will continue to suffer, irreparable

injury for which there is no adequate remedy at law, unless Defendants are enjoined by the Court from negotiating *Residuals* checks made payable to performers and from continuing to track *Residual* checks absent an order specifying the time frame the original check must be forwarded to the performer at his or her last known address used for dues billings.

63.     With respect to *Foreign Royalties,* injunctive relief is sought for issuance of an order authorizing an independent body to collect and pay all monies received from Foreign Collecting Societies, subject to Court supervision, as SAG-AFTRA is clearly incapable of acting as a collecting society, not only on behalf of its own members, but non-members as well.

64.     Plaintiffs further seek imposition of a constructive trust on all monies wrongfully obtained by Defendants, in accordance with the common law and California Civil Code §§ 2223-24, for the benefit of Plaintiffs and SAG-AFTRA members and non-members alike.

## FOURTH CAUSE OF ACTION

## VIOLATIONS OF CALIFORNIA'S BUSINESS & PROFESSIONS CODE §§ 17200 *ET SEQ.*

## (AGAINST SAG-AFTRA AND GIPR)

65.     Plaintiffs hereby repeat, reallege and incorporate by reference

the allegations contained in paragraphs 1 through 42, above.

66.     After being accused of devising a scheme to avoid escheating allegedly "unclaimed" *Foreign Royalties* monies to the State of California in the Class Action initiated by Ken Osmond of *"Leave It To Beaver"* fame against SAG, SAG and AFTRA thereafter merged into SAG-AFTRA and thereafter insisted on becoming incorporated in the State of Delaware where escheat laws permit SAG-AFTRA to retain in its coffers all unclaimed monies belonging to out-of-state residents.  Plaintiffs are informed and believe that the lionshare of said residents eligible to receive *Residuals* and *Foreign Royalties* are from California, thereby demonstrating that SAG-AFTRA was engaging in forum shopping to ensure its maximum retention of *Residuals* and *Foreign Royalties,* without ever having to be accountable for the distribution thereof.

67.     Defendants have continued to collect monies on behalf of Plaintiffs and others and have asserted to third-party payors that Defendants have the right to collect such monies.  Although exculpatory language in the recently adopted SAG-AFTRA Constitution and By-Laws would seek to insulate Defendant SAG-AFTRA from liability, said language is void against public policy and furthermore does not apply to non-members, let alone performers on works not produced under the terms of a Collective Bargaining Agreement.

68.   Defendants have failed to pay Plaintiffs and others the monies it has collected in a time frame acceptable under any reasonable business practice.

69.   Defendants have likewise taken an unauthorized commission or fee for the collection and distribution of these monies.

70.   Defendants' conduct as described herein is illegal, unfair, and fraudulent pursuant to California Business and Professions Code §§ 17200 *et seq.* Defendants have devised a scheme to deceive not only Plaintiffs as well as members and non-members alike, but also the third-party payors so that Defendants could keep *Residuals* and *Foreign Royalties*, plus interest, for themselves.

71.   Defendants' actions are unfair and fraudulent in that they have intentionally concealed information from Plaintiffs and others, and have made misrepresentations to third-party payors, on a continual basis, in conformity with their scheme, thereby precluding Plaintiffs and others from collecting *Residuals* and *Foreign Royalties* to which they are entitled, in a reasonable time frame.

72.   Further, Defendants have devised a scheme to deceive not only Plaintiffs and its members and non-members alike, but also the State of California and its citizens so that Defendants could keep the *Residuals*

and *Foreign Royalties* for themselves.

73.     On information and belief, Defendants' actions are illegal in that they have intentionally moved all *Residuals* and *Foreign Royalty* monies out of escrow and into a general fund and/or trust account to avoid any monies escheating to the State of California, thereby precluding the State of California and its citizens from collecting the benefit of these *Residuals* and *Foreign Royalty* monies to which they are entitled pursuant to the Unclaimed Property Law, California Civil Procedure Code §§ 1500-1582.

74.     These illegal, unfair, and fraudulent business practices present a continuing threat to members of the public.  Plaintiffs and other members of the public have no other adequate remedy of law in that the amount of damage incurred by each member of the public is small in comparison to the cost of litigation of this matter.  As such, Plaintiffs, including on behalf of the public, are requesting that Defendants be permanently enjoined from escaping the escheat laws of the State of California, relative to California residents, and from engaging any further in its preexisting business practice of negotiating *Residual Checks* which have been issued to members and non-members alike by Producers and Payroll Companies, absent written authorization

from the performer to do so, in the same way Employers in California cannot deduct monies from employee paychecks absent specific authorization. California *Labor Code Sections 221 and 224.* With respect to *Foreign Royalties,* injunctive relief is sought for issuance of an order authorizing an independent body to collect and pay all monies received from Foreign Collecting Societies, subject to Court supervision, as SAG-AFTRA is clearly incapable of acting as a collecting society, not only on behalf of its own members, but non-members as well.

75. As a further direct and proximate result of the aforementioned acts, Defendants received and continue to receive an unknown amount of money from the collection, and nonpayment, of *Residuals and Foreign Royalties* that may otherwise be owed to the State of California.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves and the membership of SAG-AFTRA respectfully requests of the Court the following relief:

1. An accounting from its officers, employees, agents and representatives of, and to account for, all *Residuals* and *Foreign Royalties* received by said labor organization and its predecessor labor organizations, SAG

and AFTRA, from Producers and Foreign Collecting Societies or other entities, from 1997 to present, including all monies which have been distributed to or withheld from performers, including the Producer's share of the "performers share", if any, on "covered" and "noncovered" works as well as all administrative fees deducted as well as all interest earned on *Residuals* and *Foreign Royalties* deposited into SAG-AFTRA or their predecessors accounts;

2.      Access   to   all   Collective   Bargaining   Agreements,   Contracts, Agreements, Memorandums of Understanding and Sideletters as more fully set forth in Paragraph 46, above;

3.      An accounting for the millions of dollars of expenditures purportedly made by SAG for computer equipment, software, and IT staffing, consulting and maintenance, commencing in Fiscal Year 2004 to present, in light of SAG-AFTRA's General Counsel and Deputy National Executive Director Duncan Crabtree-Ireland's public proclamation seeking to justify SAG's failure to disburse monies for close to a decade on the guise that SAG had an antiquated computer system;

4.      An accounting of and reimbursement of all monies paid to Labor Consultants, Legal Counsel and various entities purportedly used by the labor organization to solidify and whitewash the collection, disbursement and retention of *Foreign Royalties* and *Residuals* by SAG-AFTRA and its

predecessors;

5.     To account for all monies expended by officers, employees and representatives of SAG-AFTRA and its predecessors, including Labor Consultants and Legal Counsel, for First Class Travel, including to foreign countries, political events, lavish parties from 2008 to present, and for any direct and indirect loans;

6.     That each Defendant, their respective agents, servants, employees, officers, attorneys, successors, and assigns, and all of these persons actively in concert or participation with each or any of them, be preliminarily and permanently enjoined from directly or indirectly infringing upon the rights of Plaintiffs and others in any manner, and further requiring the paying out of monies collected from *Residuals* and *Foreign Royalties* to Plaintiffs and their rightful owners, and further preventing SAG-AFTRA from ever again negotiating *Residual* checks issued by Producers to performers;

7.     For establishment of an independent body to collect and pay all *Foreign Royalties* subject to Court supervision, as SAG-AFTRA is clearly incapable of acting as a collecting society;

8.     That responsible parties be required to pay such damages to Plaintiffs and to restore all monies wrongfully taken from SAG-

AFTRA to the Union's coffers, in an amount to be determined at trial, but that are in excess of the jurisdiction of this Court;

9.    That each Defendant be required to account for all gains, interest, and advantages derived by each Defendant from the wrongful acts alleged herein;

10.    That the Court impose a constructive trust;

11.    For Punitive Damages on the Second Cause of Action;

12.    That Plaintiffs recover their costs in prosecuting this action, including without limitation, reasonable attorneys' fees pursuant to statutes, including 29 U.S.C. § 431, as well as California Code of Civil Procedure § 1021.5;

13.    That each Defendant pay to Plaintiffs an award of prejudgment interest according to proof;

14.    Pursuant to California Business and Professions Code § 17203, and pursuant to the equitable powers of this Court, Plaintiffs pray that the Defendants be permanently enjoined from the unlawful business practices described herein;

15.    Pursuant to California Business and Professions Code § 17203 and pursuant to the equitable powers of this Court, Plaintiffs pray that the Defendants also be ordered, pursuant to said request for

injunctive relief and otherwise, to restore to Plaintiffs and the

members and non-members of SAG-AFTRA all monies collected

and/or retained by means of any act or practice declared by this Court to

be unlawful, unfair, or fraudulent under California Business and

Professions Code §§ 17200 *et seq.;* and,

16.     That Plaintiffs be given leave to add a cause of action on

Ex Parte Application for Breach of Fiduciary Duties under *29 U.S.C.*

*Section 501* against the appropriate offending officers, employees,

agents, Consultants, and representatives of SAG-AFTRA, according to

proof; and,

17.     That Plaintiffs be given such other and further relief as the

Court deems just and proper.

LAW OFFICES OF
HELENA S. WISE

Dated: May 24, 2013           By_____
HELENA S. WISE, Bar No. 91163
Attorney for Plaintiffs

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury.

DATED: May 24, 2013           LAW OFFICE OF HELENA S. WISE

By_____
HELENA S. WISE

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Manuel Real and the assigned discovery Magistrate Judge is Frederick F. Mumm.

The case number on all documents filed with the Court should read as follows:

## CV13- 3741 R (FFMx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

Unless otherwise ordered, the United States District Judge assigned to this case will hear and determine all discovery related motions.

===============================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
CENTRAL DISTRICT

| | |
|---|---|
| Ed Asner, et al.,<br>SEE ATTACHED<br><br>_____<br>*Plaintiff(s)*<br>v.<br><br>Screen Actors Guild - American Federation of<br>Television and Radio Artists, a labor organization<br>commonly known as SAG-AFTRA and its  GUILD<br>INTELLECTUAL PROPERTY REALIZATION, LLC<br>_____<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No.   CV13- 3741 R(FFmx)<br>)<br>)<br>)<br>)<br>)<br>) |

### SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

HELENA S. WISE, Bar No. 91163
LAW OFFICES OF HELENA S. WISE
1907 W. Burbank, Suite A
Burbank, CA 91506
(818) 843-8086

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date:  5-28-13
_____          _____
                                    *Signature of Clerk or Deputy Clerk*

1149

**ATTACHMENT TO SUMMONS**
**ASNER, ~~ET AL~~. VS. SAG-AFTRA, ~~ET AL~~**

ED ASNER, CLANCY BROWN, GEORGE COE, TOM BOWER, DENNIS HAYDEN, WILLIAM RICHERT, LOUIS REEKO MESEROLE, TERRENCE BEASOR, ALEX MCARTHUR, ED O'ROSS, ROGER CALLARD, STEVEN BARR, RUSSELL GANNON, STEPHEN WASTELL, JAMES A. OSBURN, and ERIC HUGHES aka JON WHITELEY, collectively known as the United Screen Actors Committee (USAC),

Plaintiffs,

vs.

SCREEN ACTORS GUILD – AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, a labor organization commonly known as SAG-AFTRA and its GUILD INTELLECTUAL PROPERTY REALIZATION, LLC,

Defendants.

JS 44   (Rev. 12/12)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| SEE ATTACHED | SEE ATTACHED |

**(b)**  County of Residence of First Listed Plaintiff    Los Angeles
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Los Angeles
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)**  Attorneys *(Firm Name, Address, and Telephone Number)*
HELENA S. WISE, Bat No. 91163
LAW OFFICES OF HELENA S. WISE
1907 W. Burbank, Suite A, Burbank, CA 91506  (818) 843-8086

Attorneys *(If Known)*
BOB BUSH, Bar No. 65357
BUSH, GOTTLIEB, SINGER, LOPEZ, KOHANSKI, ADELSTEIN
500 N. Central, Suite 800, Glendale, CA 91203  (818) 973-3200

### II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government
Plaintiff
- ☒ 3   Federal Question
*(U.S. Government Not a Party)*
- ☐ 2   U.S. Government
Defendant
- ☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

### III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                        *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | Corrupt Organizations |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 480 Consumer Credit |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | **LABOR** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | | ☐ 710 Fair Labor Standards | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | | Act | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | | ☒ 720 Labor/Management | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | | Relations | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | | ☐ 740 Railway Labor Act | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | | ☐ 751 Family and Medical | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - | Product Liability | | Leave Act | Act |
| | Medical Malpractice | | | ☐ 790 Other Labor Litigation | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 791 Employee Retirement | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | Income Security Act | Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | **FEDERAL TAX SUITS** | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | ☐ 870 Taxes (U.S. Plaintiff | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | or Defendant) | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party | |
| | Employment | **Other:** | | 26 USC 7609 | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | |
| | Other | ☐ 550 Civil Rights | **IMMIGRATION** | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | ☐ 462 Naturalization Application | | |
| | | ☐ 560 Civil Detainee - | ☐ 465 Other Immigration | | |
| | | Conditions of | Actions | | |
| | | Confinement | | | |

### V.  ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1   Original
Proceeding
- ☐ 2   Removed from
State Court
- ☐ 3   Remanded from
Appellate Court
- ☐ 4   Reinstated or
Reopened
- ☐ 5   Transferred from
Another District
*(specify)*
- ☐ 6   Multidistrict
Litigation

### VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
29 U.S.C. Section 431
Brief description of cause:
Demand for Accounting by Labor Union under LMRDA

### VII.  REQUESTED IN
COMPLAINT:

☐  CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:      ☒ Yes    ☐ No

### VIII.  RELATED CASE(S)
IF ANY

*(See instructions):*
JUDGE   1) M. Morrow; 2) J. Otero 3) D. Gee          DOCKET NUMBER   SEE ATTACHED

DATE
05/23/2013

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #              AMOUNT              APPLYING IFP              JUDGE              MAG. JUDGE

CV13 - 3741

## ATTACHMENT TO CIVIL COVER SHEET
## ASNER, ET AL. VS. SAG-AFTRA, ET AL.

### 1(A) PLAINTIFFS:

ED ASNER, CLANCY BROWN, GEORGE COE, TOM BOWER, DENNIS HAYDEN, WILLIAM RICHERT, LOUIS REEKO MESEROLE, TERRENCE BEASOR, ALEX MCARTHUR, ED O'ROSS, ROGER CALLARD, STEVEN BARR, RUSSELL GANNON, STEPHEN WASTELL, JAMES A. OSBURN, and ERIC HUGHES aka JON WHITELEY, collectively known as the United Screen Actors Committee (USAC)

### DEFENDANTS:

SCREEN ACTORS GUILD – AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, a labor organization commonly known as SAG-AFTRA and its GUILD INTELLECTUAL PROPERTY REALIZATION, LLC

### VIII: RELATED CASES IF ANY:

A) *SCREEN ACTORS GUILD VS. FEDERAL INSURANCE,* CV 11-7123-DLG (VBKx)

This case is still pending and discusses many of the financial transgressions referenced in the instant lawsuit.

B) *MARTIN SHEEN, ET AL., VS. SCREEN ACTORS GUILD, ET AL.,* CV 12-1468 SJO (AJW)

This case has been dismissed by Stipulation and pertained to the Merger of SAG and AFTRA. Various Exculpatory Clauses were written into SAG-AFTRA's Constitution and By-Laws which are at issue herein, while SAG-AFTRA incorporated in the State of Delaware, with SAG ceasing to be a California Corporation.

C) *KEN OSMOND, ET AL., VS. SCREEN ACTORS GUILD, ET AL.,* CV 07-07095 MMM (PJWx)

This State Court Class Action case was removed and remanded to the Superior Court of Los Angeles to procure payment of *"Foreign Royalties"* and did not encompass an LMRDA claim.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES**: Has this action been previously filed in this court and dismissed, remanded or closed? ☒ NO   ☐ YES

If yes, list case number(s): _____

**VIII(b). RELATED CASES**: Have any cases been previously filed in this court that are related to the present case? ☐ NO   ☒ YES

If yes, list case number(s): CV 11-7123-DLG ; CV 12-1468-SJO ; CV 07-07095 MMM M

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☒ A. Arise from the same or closely related transactions, happenings, or events; or

☒ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☒ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE**: (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles - but SAG-AFTRA is now incorporated in Delaware | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | |

*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
**Note**: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _____   DATE: 5/24/13

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |