1  HELENA S. WISE (SBN 91163)
   LAW OFFICE OF HELENA S. WISE
2  1907 W. Burbank Blvd., Suite 101
   Burbank, CA  91506
3  Tel.:  (818) 843-8086
   Fax:  (818) 843-7958
4  lawofficesofhelenasunnywise@earthlink.net

5  Attorneys for ED ASNER, CLANCY BROWN,
   GEORGE COE, TOM BOWER, DENNIS
6  HAYDEN, WILLIAM RICHERT, LOUIS
   REEKO MESEROLE, TERRENCE BEASOR,
7  ALEX MCARTHUR, ED O'ROSS, ROGER
   CALLARD, STEVEN BARR, RUSSELL
8  GANNON, STEPHEN WASTELL, JAMES A.
   OSBURN, and ERIC HUGHES aka JON
9  WHITELEY, collectively known as the United
   Screen Actors Committee (USAC), Plaintiffs
10

## UNITED STATES DISTRICT COURT

11

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

12

| | |
|---|---|
| 13  ED ASNER, CLANCY BROWN, GEORGE COE, TOM BOWER, DENNIS | Case No.: 13-CV-3741 R (FFMx) |
| 14  HAYDEN, WILLIAM RICHERT, LOUIS REEKO MESEROLE, TERRENCE | PLAINTIFFS OPPOSITION TO MOTION TO DISMISS |
| 15  BEASOR,  ALEX MCARTHUR, ED | |
| 16  O'ROSS, ROGER CALLARD, STEVEN BARR,   RUSSELL GANNON, | Hearing: October 7, 2013 Courtroom: 8 |
| 17  STEPHEN WASTELL, JAMES A. | Time: 10:00 a.m. |
| 18  OSBURN, and ERIC HUGHES aka JON WHITELEY, collectively known as the | Action Filed:    May 28, 2013 Trial Date:      None |
| 19  United Screen Actors Committee (USAC), | |
| 20                          Plaintiffs, | |
| 21                   v. | |
| 22  SCREEN ACTORS GUILD – AMERICAN FEDERATION OF | |
| 23  TELEVISION AND RADIO ARTISTS,  a labor  organization      commonly known | |
| 24  as SAG-AFTRA and its    GUILD INTELLECTUAL PROPERTY | |
| 25  REALIZATION, LLC, | |
| 26                       Defendants. | |
| 27 | |
| 28 | |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I)   INTRODUCTION                                                          1

II)  FACTUAL STATEMENT                                                     4

    a)   Different Parties and Different Issues                         5

    b)   Due Process and Fairness Lacking                              8

III) ARGUMENT                                                             11

A) *Osmond* Class Action" Settlement is Not Dispositive of Federal        11
    Issues

    1)   All Prongs of Res Judicata are Not Satisfied                 12

    2)   Due Process Right to Notice Not Satisfied                    12

    3)   Self-Serving Interests of Class Counsel Compromised          13
        Representation of Absentee Class Members Herein

B) EFFORTS TO CLAIM PLAINTIFFS LACK STANDING ARE                          17
    NOT MERITORIOUS

C) THE STATUTUE OF LIMITATIONS DEFENSES TO                                18
    STATE COURT CLAIMS ARE NOT MERITORIOUS

D) DAMAGES ARE RECOVERABLE FOR LMRDA VIOLATIONS                           19

E) SUFFICIENT ALLEGATIONS TO SUPPORT                                      20
    PUNITIVE DAMAGES HAVE BEEN ALLEGED

ii

1

## TABLE OF AUTHORITIES

2

3 | *Cases:*

4 | *Alcorn vs. Anbro Engineering, Inc.*, (1970) 2 Cal. 3d 493 — *20*

5 | *Alcorta v. Texas* (1957) 355 US 28 — 16

6 | *Cellular Plus vs. Superior Court* (1993), 14 Cal.App.4[th] 1224 — 16

7 | *Cowger vs. Rohrbach* (1989) 868 F.2d 1064 — 18-19

8 | *Grunin v. International House of Pancakes*, 513 F.2d 114 (8th Cir. 1975) — 11

9 | *In re Community Bank of Northern Virginia*, 418 F.3d 277 (3d Cir. 2005) — 16

10

*In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106 — 16
11 |      (7th Cir. 1979)

12

*In the Matter of the Contempt Proceeding re James Osburn, et al.,* — 1-2
13 |      *IATSE Local 695, et al., vs IATSE*, 611 F.2d 266 (9th Cir., 1977)

14

*Kinslow vs. American Postal Workers*, 223 F 3d 269  (7th Cir., 2000) — 19-20
15

16 | *Knox vs. SEIU*, 567 U. S. __, — 17

17

*Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir. 1983) — 11
18

*Mooney v. Holohan*, (1935) 294 US 103 — 16
19

20 | *Newby vs. Alto Rivera Apartments*, 60 Cal.App. 3d 288 — 20

21

*People v. Carter* (1957), 48 Cal.2d 737 — 16
22

*Piambino v. Bailey*, 610 F.2d 1306, 1329 (5th Cir. 1980) — 11
23

24 | *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2000) — 15
           ("*Reynolds I*")
25

26 | *State ex rel. Harris v. PricewaterhouseCoopers, LLP*, (2006), — 6
           39 Cal. 4th 1220
27

*iii*

28

1   *Teitelbaum Furs, Inc. v. Dominion Ins. Co.* (1962) 58 Cal.2d 601                16

2

3   *Wyatt vs. Union Mortgage Co.* (1979), 24 C 3d 773                                19

4

5   *Zimmerman v. Zwicker & Assocs, P.C.*, 09 Civ. 3905 (RMB/JS),                     15
        2011 WL 65912, at *4 (D.N.J. Jan. 10, 2011)

6

7

8   *California Statutes:*

9   *Business and Professions Code Section 17200*                                    *passim*

10   *Penal. Code, § 4900*                                                           16

11

12   *Federal Statutes:*

13   *29 USC § 401(b)*                                                               18

14   *29 USC § 402(m)*                                                               18

15   *29 U.S.C. § 431*                                                               *passim*

16   *29 U.S.C. § 501*                                                               *passim*

17

18   *Treatises:*

19   *Restatement, Judgments, § 11*                                                  16

20   *Restatement 2d Torts, Section 46 comment e*                                    20

21

22

23

24

25

26

27                                             *iv*

28

PLAINTIFFS OPPOSITION TO MOTION TO DISMISS

1    I)        **INTRODUCTION**

2         16-members[1] strong, the United Screen Actors Committee (USAC) consists

3    of well-known performers ED ASNER, CLANCY BROWN, GEORGE COE, TOM

4    BOWER, DENNIS HAYDEN, WILLIAM RICHERT, LOUIS REEKO

5    MESEROLE, TERRENCE BEASOR, ALEX MCARTHUR, ED O'ROSS, ROGER

6    CALLARD, STEVEN BARR, RUSSELL GANNON, STEPHEN WASTELL,

7    JAMES A. OSBURN,[2] and ERIC HUGHES aka JON WHITELEY, collectively

8

9    ――――――――――――――

10    [1] Although SAG-AFTRA repeatedly claims there are 17 Plaintiffs, there are 16,

11    with each, except for James Osburn, possessing substantial television and feature
     film credits.  Plaintiffs Declarations, referenced by the last name of each, i.e. Brown

12    Decl., are submitted to show that this litigation must  be allowed to proceed since

13    Plaintiffs and other members of SAG-AFTRA, as well non-members, are fully
     entitled to know why SAG-AFTRA is secreting in excess of One Hundred and

14    Thirty Million Dollars in a non-ERISA "trust", which it refuses to be accountable

15    for, even though a labor organization is required to be transparent in these and other
     regards. See the Labor-Management Reporting and Disclosure Act of 1959

16    ("*LMRDA*")(29 USC §§ 401, et seq).  This Court has not hesitated to incarcerate

17    Union Officials who have failed to properly perform their reporting and disclosure
     obligations, and/or who have wrongfully benefitted from financial transgressions.

18
     [2] James  A. Osburn is the only Plaintiff who no longer belongs to Defendant Labor

19    Organization, electing to pursue his chosen profession within the Hollywood

20    Sound Union, IATSE Local 695,  including as its elected Business Representative,
     in lieu of a career as a performer.  Osburn first gained SAG membership for a

21    minor speaking part in Steven Spielberg's cult classic, *Close Encounters of the*

22    *Third Kind,* commonly known as an upgrade for a background actor. (Complaint,
     ¶ 25).  A microphone boom operator and mixer by trade, including on the Oscar-

23    winning show, *Titanic,* Osburn is no stranger to this Court having resisted

24    demands more than three decades ago by the International Alliance of Theatrical
     Stage Employes (IATSE) and the Alliance of Motion Picture and Television

25    Producers (AMPTP) to execute a labor contract which was negotiated when Local

26    695 was under trusteeship.  Osburn refused to sign the collective bargaining
     agreement since it was never submitted to or ratified by the membership, despite

27    threats of incarceration and a sentence for contempt by this Court. *In the Matter of*

28        · (footnote continued)

―――――――――――――――――――――――――――――――――――――――――
PLAINTIFFS OPPOSITION TO MOTION TO DISMISS

1  USAC or Plaintiffs.  Plaintiffs oppose Defendants SAG-AFTRA and its Guild

2  Intellectual Property Realization's[3] Motion to Dismiss, which although labeled as a

3  12(b)(6) Motion, is in effect an attempt to procure Summary Judgment or at least

4  Summary Adjudication of the First Cause of Action without benefit of discovery

5  based upon the improvident theory that a state court Class Action Settlement in

6  *Osmond, et al. vs. SAG[4]*, is res judicata and dispositive of all federal and state

7  ─────────────────

8  *the Contempt Proceeding re James Osburn, et al., IATSE Local 695, et al., vs
   IATSE*, (9th Cir., 1977),  611 F.2d 266, although this Court mandated Local 695's

9  counsel, Timothy Sargeant, to immediately obtain a writ of habeas corpus to

10  ensure that Osburn remained free.

11  [3]  Hereinafter collectively Defendants and/or SAG-AFTRA.

12  [4] Ken Osmond who played Beaver in the beloved television series, *Leave It to
   Beaver,* filed a Class Action suit to recover Foreign Royalties/Foreign Levies to

13  which he was entitled as a performer under foreign laws, after learning that the
   Screen Actors Guild  (SAG), well before its merger with AFTRA, had agreed with

14  the Producers, without notice to the membership, let alone an opportunity to review

15  or ratify a Foreign Levy Agreement (FLA) which was entered into between SAG
   and the Producers, to permit collection from foreign collecting societies of the

16  *performers share* of monies guaranteed by the Berne Convention.  FLAs were

17  devised in close proximity to Jay Roth, formerly with defense counsel herein and
   now head of the Directors Guild of America (DGA), and Robert Hadl, then with

18  Universal Studios, and now a Foreign Royalties Consultant to the Producers and

19  Labor alike, appeared before Congress and described the importance of recovering

20  a new found pot of gold -- millions of dollars being extracted as levies and
   collected by foreign countries on audiovisual projects – which foreign laws

21  acknowledged belonged to writers and performers. (USAC Request for Judicial

22  Notice [USAC Req.Jud.Not.], Exh. "1", at 87-88,91, 94, 96, 102-103.)

23   Following the drafting and signing off on various undisclosed FLAs, SAG agreed

24  to split the proceeds of foreign levies with the Producers, thereby avoiding a 100%
   distribution of the *performers share* of foreign levies to their rightful owners,

25  namely actors and actresses like Plaintiffs who bring creative works to life on film,

26  television and other mediums.  Osmond's action was then filed in the Los Angeles
   Superior Court *Osmond, etc., vs. SAG,* Los Angeles Superior Court Case No. BC

27  377780, and once  removed by SAG to federal court, the Honorable Margaret

28       (footnote continued)

─────────────────

1 claims, including the First Cause of Action brought under the *LMRDA,* 29 USC §§
2 401, et seq. which was enacted by Congress to eliminate or prevent improper
3 practices, including a breach of trust, corruption, disregard of the rights of individual
4 employees and other failures to observe high standards of responsibility and ethical
5 conduct on the part of unions, employers, labor relations consultants, and their
6 officers and representatives. *First and foremost, the underlying Osmond action*
7 *never involved an LMRDA claim, although it purports to waive all claims that could*

8

9 _____

10 Morrow remanded same so that Osmond and other performers could obtain the
monies rightfully due them which SAG refused to pay. *Osmond, et al. vs. SAG, et*
11 *al., CV 07-07095  MMM (PJWx).* (USAC Req.Jud.Not.] Exh. "2").

12
After allowing for a passage of time following removal, and despite not having
13 engaged in *discovery, let alone requiring an audit to see if SAG was being truthful*
*as to how much it had collected from 1996 forward,* Osmond's Class Action
14 counsel Neville Johnson and Paul Kiesel, also handling similar litigation against the
15 Writers Guild of America and the Directors Guild of America where the reported
sum of monies collected by the latter Unions were grossly disproportionate to the
16 meager collection reported by SAG, suddenly agreed to mediate all three cases
17 before JAMS Mediator Joel Grossman.  Grossman, formerly with SONY Pictures,
however had been instrumental in negotiating the Foreign Levy Agreements on
18 behalf of the Producers with SAG, the WGA and the DGA, thereby entitling
19 Producers to take a large chunk of the performers and writers share, in addition to
20 those monies already earmarked under foreign laws for producers.

21 Shortly thereafter three Class Action Settlements were widely touted in the press,
22 with Neville Johnson and Paul Kiesel, receiving in excess of two million dollars,
including $315,000.00 from SAG, with the latter according to Plaintiffs, *based*
23 *entirely upon minimal efforts.* All three Class Action Settlements were approved by
24 the Honorable Carl West, now mediating with JAMS as well.  For these and other
reasons, the SAG Class Action Settlement is subject to collateral attack and should
25 not be dispositive of Complaint at hand.

26

27

28

PLAINTIFFS OPPOSITION TO MOTION TO DISMISS          3

1 *have been brought, even though such exculpatory language is contrary to and*

2 *forbidden by the LMRDA. 29 U.S.C. Section 431 and 501.  Secondly, it never*

3 *involved issues about Residuals, including the Unions documented practice of*

4 *signing checks made out to members and then keeping the proceeds because*

5 *members or their beneficiaries could not be found purportedly due to SAG's use of*

6 *an antiquated computer system. Thirdly, it did not involve AFTRA which did not*

7 *even merge with SAG until more than one year after the Class Action Settlement was*

8 *approved below. Lastly, the Class Action settlement was not fairly negotiated, with*

9 *due process violations, including inadequate notice, and a refusal to account for*

10 *funds received and disbursed while also denying access to agreements upon which*

11 *the settlement was based, readily apparent, even though Defendant SAG was and*

12 *remains a labor organization subject to the LMRDA.*

13      The manner in which the settlement involving SAG was achieved, without

14 genuine notice to all potential class members, let alone failure to certify the class

15 until after Settlement was inked, coupled with ample evidence that Class counsel

16 placed their interest above those of the class, warrants a full collateral attack as well

17 as further briefing envisioned by a Motion for Summary Judgment before this Court

18 gives any credence to SAG-AFTRA vitriolic attack on Plaintiffs.

19 **II)   FACTUAL STATEMENT**

20      Defendants seek to portray themselves as an innocent labor organization who

21 has been wrongly accused of mishandling of Residuals as well as Foreign

22 Royalties/Foreign Levies, while seeking to deceive this Court into believing that

23 Osmond's action also resolved issues about Residuals and purportedly resolved all

24 disputes, including for LMRDA violations, against SAG-AFTRA, even though

25 AFTRA was not even a party to the underlying action, nor were LMRDA violations

26 or handling of Residuals before the state court. For reasons shows herein, Plaintiffs

27 vigorously dispute that the *Osmond* action is dispositive of the issues raised by the

28 instant Complaint.

PLAINTIFFS OPPOSITION TO MOTION TO DISMISS          4

### a)   Different Parties and Different Issues

AFTRA's receipt and distribution of Residuals as well as Foreign Royalties/Foreign Levies has never been challenged, while AFTRA had not even merged into SAG when the *Osmond* Class Action Settlement was sanctioned by the state court.  Had AFTRA been included, the notice which would have to have been given would **have more than doubled.**  Plaintiffs herein are with exception of Osburn well known television actors who as members of AFTRA are also entitled to Residuals as well as Foreign Royalties/Foreign Levies. The rejection of USAC's demands for accountability and transparency from SAG-AFTRA necessitates that the Motion to Dismiss be denied since AFTRA's receipt and distribution of monies is clearly at issue, just like SAGs, as well as those of the merged union, particularly when AFTRA's financial records show the same serious flaws as SAGs, and now SAG-AFTRAs do as well. (USAC Req.Jud.Not., Exhs.  28-29).

Similarly, Residuals were never covered in the underlying *Osmond* Action. Except for a reference to Residuals in the definition of who was a member of the class, the entire Class Action Agreement and Judgment, as well as the original Complaint, the Remand Order, and the subsequent action initiated by SAG against Federal Insurance[5] because Federal Insurance refused to pay the attorneys fees to

---

[5] *Screen Actors Guild vs. Federal Insurance*, CV 11-7123-DLG (VBKx), wherein the carrier defended its actions on the basis that wrongful conversion of monies belonging to performers was not a covered act, is attached to USAC's Req.Jud.Not., as Exhs. 24-25 , while the Order of the Honorable Dolly Gee granting Federal Insurance's Motion for Summary Judgment, is Exh.26  thereto. SAG-AFTRA's counsel herein has advised that it is appealing the latter ruling. Nonetheless, the evidence adduced in the underlying action supports Plaintiffs claims herein, particularly since Federal Insurance extensively inquired about the Union's contradictory accounting records pertaining to its receipt and disbursements of Foreign Royalties/Foreign Levies, including pass-overs to Producers which although identified as monies transmitted to performers are now being reclassified as pass-overs because SAG seeks to diminish the pool of monies
          (footnote continued)