1  HELENA S. WISE (SBN 91163)
   LAW OFFICE OF HELENA S. WISE
2  1907 W. Burbank Blvd., Suite 101
   Burbank, CA  91506
3  Tel.: (818) 843-8086
   Fax: (818) 843-7958
4  lawofficesofhelenasunnywise@earthlink.net

5  Attorneys for ED ASNER, CLANCY BROWN,
   GEORGE COE, TOM BOWER, DENNIS
6  HAYDEN, WILLIAM RICHERT, LOUIS
   REEKO MESEROLE, TERRENCE BEASOR,
7  ALEX MCARTHUR, ED O'ROSS, ROGER
   CALLARD, STEVEN BARR, RUSSELL
8  GANNON, STEPHEN WASTELL, JAMES A.
   OSBURN, and ERIC HUGHES aka JON
9  WHITELEY, collectively known as the United
   Screen Actors Committee (USAC), Plaintiffs
10

11           UNITED STATES DISTRICT COURT

12     CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

13  ED ASNER, CLANCY BROWN,              Case No.: 13-CV-3741 R (FFMx)
    GEORGE COE, TOM BOWER, DENNIS
14  HAYDEN, WILLIAM RICHERT, LOUIS       PLAINTIFFS EVIDENCE
    REEKO MESEROLE, TERRENCE             IN OPPOSITION TO
15  BEASOR,  ALEX MCARTHUR, ED           MOTIONS
16  O'ROSS, ROGER CALLARD, STEVEN
    BARR,   RUSSELL GANNON,
17  STEPHEN WASTELL, JAMES A.            Hearing: October 7, 2013
    OSBURN, and ERIC HUGHES aka JON      Courtroom: 8
18                                       Time: 10:00 a.m.
    WHITELEY, collectively known as the
19  United Screen Actors Committee (USAC),   Action Filed:    May 28, 2013
                              Plaintiffs,     Trial Date:      None
20
                        v.
21
    SCREEN ACTORS GUILD –
22  AMERICAN FEDERATION OF
    TELEVISION AND RADIO ARTISTS,  a
23  labor organization       commonly known
    as SAG-AFTRA and its     GUILD
24  INTELLECTUAL PROPERTY
25  REALIZATION, LLC,
                        Defendants.
26

27

28  _____

    PLAINTIFFS EVIDENCE IN SUPPORT OF OPPOSITION TO MOTIONS

1

TABLE OF CONTENTS

2 DECLARATION OF CLANCY BROWN

3      (EXHIBITS A-D)

4

5 DECLARATION OF HELENA S. WISE

6      (EXIBITS E-P)

7

8 DECLARATION OF DENNIS HAYDEN

9      (EXHIBITS Q-R)

10

11 DECLARATION OF GEORGE COE

12      (EXHIBITS S)

13

14 DECLARATION OF ERIC HUGHES

15      (EXIBITS T-V)

16

17 DECLARATION OF WILLIAM RICHERT

18

19 DECLARATION OF ROGER CALLARD

20

21 DECLARATION OF LOUIS REEKO MESEROLE

22

23 DECLARATION OF RUSSELL GANNON

24 EXHIBITS:

25     EXHIBIT A:  Letter to General Counsel Crabtree-Ireland, delivered on

26                 December 2, 2011

27

28

2

1    EXHIBIT B:   Letter from General Counsel Crabtree-Ireland, dated

2                December 16, 2011, to Clancy Brown;

3    EXHIBIT C:   Letter from Clancy Brown to General Counsel Crabtree- Ireland

4                Dated January 28, 2012;

5    EXHIBIT D:  USAC Letter to  Ken Howard  and Roberta Reardon, dated

6                September 11, 2012;

7    EXHIBIT E:  Letter from Bob Bush to Helena S. Wise and E-Mails, dated

8                September 25, 2012;

9    EXHIBIT F:  Letter from Helena S. Wise, dated October 17, 2012 to Bob Bush;

10    EXHIBIT G:  Assortment of E-Mails between Bob Bushs and Helena S. Wise;

11    EXHIBIT H:  Letter from Helena S. Wise, dated December 17, 2012, to Bob

12                Bush;

13    EXHIBIT I:  Letter from Helena S. Wise, dated January 22, 2013, to Bob Bush;

14    EXHIBIT J:  Letter from Duncan Crabtree-Ireland to Neville Johnson, dated

15                June 7, 2007;

16    EXHIBIT K: Letter from Anita Wu, dated November 2, 2010, to Neville

17                Johnson;

18    EXHIBIT L:  Hollywood Reporter article, by Jonathan Handel, dated June 6,

19                2013;

20    EXHIBIT M: E-Mail Exchange between Jonathan Handel and Helena S. Wise,

21                dated June 6, 2013;

22    EXHIBIT N:  Signature Pages from Foreign Levy Agreement

23    EXHIBIT O:  Robert Hadl Inactive Status, DC Bar

24    EXHIBIT P:  May 3 and 27, 2011 Letters from Daniel Schecter to Neville

25                Johnson

26    EXHIBIT Q:  Dennis Hayden Foreign Royalty Statements, 12/29/2008,

27                6/2/2009, 10/15/2009 and 10/30/2009

28

*3*

# EXHIBIT A

# DECLARATION OF
# CLANCY BROWN

6

DECLARATION OF CLANCY BROWN

I, CLANCY BROWN, declare as follows:

If called to testify, I could and would competently testify to the following facts which are within my personal knowledge.

1.    I have been a member of the Screen Actors Guild since 1982 and following its dissolution and merger with AFTRA in April 2012, I am and remain a member in good standing of SAG-AFTRA.  I have reviewed the Complaint for Damages and believe that it is true and correct in all material respects.  I have been in numerous feature length films, including *"Cowboys and Aliens" and "The Highlander",* as well as  numerous television shows, ranging from such diverse projects as *"E.R."* to *"The Jackie Chan Adventures",* and am the voice immortalized in such beloved children shows as  *SpongeBob SquarePants, Teenage Mutant Ninja Turtles,* and *Superman,* and numerous video games.

2.    I served on the SAG National Board as an alternate from October 2008 until September 2009 and then was appointed to the SAG National Board by former National Secretary-Treasurer Connie Stevens upon her resignation in order to complete her Board term from December 2010 until September 2011.

3.    For the period of time I served my union as a board member and on various committees, I became increasingly concerned about the refusal of leadership to, among other things, permit transparency regarding union contracts, agreements, finances, and the disposition of membership property. I completed my National Board term and resigned all union committees on which I served in order to assert my rights as a union member without being subject to persecution by my union and the AFL-CIO under their internal agreements restricting the free speech of SAG Board and committee members. After researching our rights as members of a union under United States Labor Law, I and certain of my colleagues that were either sitting or former National Board Members including co-plaintiffs George Coe and

1.

7

Ed Asner served a letter upon SAG National Executive Director David White and SAG Deputy National Executive Director and General Counsel Duncan Crabtree-Ireland demanding complete accountability of Foreign Royalties, access to certain Collective Bargaining Agreements and transparency in union finances. A true and correct copy of this original demand letter served upon the Guild on December 2, 2011, is attached hereto as Exhibit "A". Of utmost and urgent concern to us was the refusal of SAG leadership to even disclose, let alone discuss, the impending expiration and presumed renegotiation and/or renewal of the Foreign Levy Agreement which had previously been described in court and in the press as a Collective Bargaining Agreement even though the details of which had never been disclosed to the SAG membership let alone submitted to a vote for ratification.

4.     Of further concern, among other things, were incomplete LM-2 Reports filed by SAG that require specificity in reporting receipts and disbursements according to the Labor Management Reporting and Disclosure Act (LMRDA) pursuant to 29 U.S.C. Section 431(c). When this demand was served, SAG and their accountants, PRICEWATERHOUSE-COOPERS claimed on the annual LM-2 that "$95,205,672" was "held in trust for others" without specifying how that amount had been received or specifying whom the "others" might be that are the rightful owners of this money or how or whether SAG actually returned these funds to "others", the rightful owners. When this demand was served, SAG and their accountants, PRICEWATERHOUSE-COOPERS failed to disclose with appropriate specificity on the annual LM-2 the relationship with, activities of, or any income or expenses due or paid to or from the Guild Intellectual Property Realization, LLC (GIPR) which lists the same business address as SAG and whose only officer appears to be Duncan Crabtree-Ireland. When this demand was served, we believed that a timely and complete disclosure and distribution of the documents and accounting we requested would address many of our concerns and provide proof of transparency and good-faith by the elected and hired leadership of our union.

DECLARATION OF CLANCY BROWN IN OPPOSITION TO MOTIONS

5.    When Duncan Crabtree-Ireland responded to our Demand by letter dated December 16, 2011, with a true and correct copy of same attached hereto as Exhibit "B", Mr. Crabtree-Ireland refused to provide unconditional access to the records, contracts, and agreements requested implying that I and the entire Board of Directors already knew all  details about Union Contracts and Finances including those we requested. After distributing Mr. Crabtree-Ireland's response to my colleagues and conferring about how to proceed, I replied to Mr. Crabtree-Ireland by letter dated January 28, 2012, a true and correct copy of which is attached hereto as Exhibit "C".   Therein I wrote that, "...none of the details provided to the Board of Directors in your (Crabtree-Ireland's) reports ever included the information and documents we are requesting. While on the Board of Directors, our understanding of the nature of the negotiations with foreign collecting societies was limited to how you chose to characterize them. At no time was even the Board of Directors presented or allowed to examine the Foreign Levy Agreement or the various collecting society agreements. These details which were omitted in your reports are precisely what we wish to be provided." Neither Mr. Crabtree-Ireland nor David White ever responded to us again.

6.    Shortly after my correspondence SAG and AFTRA merged, prompting the filing of additional federally mandated Reports in these regards.  At or about this same time frame, SAG-AFTRA filed for corporate status in Delaware, even though practically the entire membership of the new union, SAG-AFTRA, and its predecessor unions, SAG and AFTRA, reside currently and historically in California or other states. We believe this was done to collect, retain, and withhold member and non-member property by avoiding California escheat laws. Laws that have historically obliged SAG to make every effort to unite members (and non-members) with their property or surrender that property to the State of California.

7.    Soon after the Merger referendum vote, a few of my colleagues declined to continue pursuing their rights as union members saying they were fearful of

professional reprisal. My remaining colleagues and I sought to afford SAG-AFTRA
an opportunity to become transparent and accountable to the membership.  The
failure and refusal of SAG-AFTRA to do so became evident again upon the filing of
SAG-AFTRA's first LM-2 Report, signed by President Ken Howard and Treasurer
Matthew Kimbrough on July 30, 2012, wherein SAG-AFTRA now claimed that
$110,892,389 were "Funds Held in Trust due to Others\Due to Talent" while also
refusing, once again, to detail receipts and disbursements involving said monies, let
alone GIPR, except relative to some payments to Labor Consultants.  As a
consequence, AFTRA filings were procured and reviewed, wherein we learned that
between a two year filing period, PRICEWATERHOUSECOOPERS was paid close
to $1.5 million for accounting services alone, while expenditures and receipts for
*Foreign Royalties* were still not divulged.  Consequently, we looked for legal
counsel and formed the United Screen Actors Committee (USAC).

8.     In turn a new demand letter, dated September 11, 2012, signed by
fifteen members of USAC was served upon SAG-AFTRA Co-Presidents Ken
Howard and Roberta Reardon.  A true and correct copy of this Demand Letter is
attached hereto as Exhibit "D".  We renewed requests for accountability and
transparency in Union finances relative to not only *Foreign Royalties,* but also with
respect to Residuals as well in light of public acknowledgements by SAG-AFTRA
that tens of thousands of Residuals were "unclaimed" and being held by SAG-
AFTRA. We also demanded transparency relative to Labor Consultants who are
required to be accountable and free of conflicts of interest when rendering services to
labor organizations pursuant to 29 U.S.C. §402(m) and §501.

9.     Absent judicial intervention, SAG-AFTRA and its hired or retained
leadership will continue to escape the radar intended by Congress to ensure that
Labor Unions are not corrupt, including infiltrated by management,  and remain at all
times accountable to its membership.  In the same vein, it appears that SAG-AFTRA
is in possession of *Residuals* and *Foreign Royalties* belonging to non-members,

1    including on "non-signatory" works.  Only by accounting for the Union's

2    procurement and retention of all *Residuals* and *Foreign Royalties* wire transferred or

3    deposited into the Union's bank accounts, or invested by the Union leadership,  will

4    monies be restored to their rightful owners, namely the performers whose work

5    generated the *Residuals* and *Foreign Royalties* to begin with.

6         10.   I opted out of the Osmond Settlement after conferring with Eric Hughes

7    about the deficiencies in the Settlement Agreement, including clauses that purported

8    to waive our rights to sue the Union. I would note that the Class Action Settlement

9    Notice providing an Opt Out deadline was never published in the Union's official

10   magazine, even though *Screen Actor* is a widely read publication.

11        I declare under penalty of perjury under the laws of the State of California and

12   the United States that the foregoing is true and correct.

13        Executed on September 15, 2013 at Los Angeles, California.

14

15

16                                    CLANCY BROWN

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF CLANCY BROWN IN OPPOSITION TO MOTIONS